970 So.2d 1143 (2007)
STATE of Louisiana
v.
Allen JONES a/k/a Larry Cheatteam.
No. 07-KA-271.
Court of Appeal of Louisiana, Fifth Circuit.
October 30, 2007.
*1145 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Roger Jordan, Jr., Assistant District Attorneys, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
Jane L. Beebe, Attorney at Law, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
In this criminal matter the defendant, Allen Jones a/k/a Larry Cheatteam, appeals his conviction and sentence for looting in the aftermath of Hurricane Katrina in violation of La R.S. 14:62.5[1]. Finding no error in the proceedings below, we affirm.
The defendant was tried along with co-defendants, Jimmy Carter and Corey Cheatteam a/k/a Kedric Carter. At the conclusion of the trial, the jury returned a verdict of guilty as to all three defendants. After a motion for new trial was denied, the defendant was sentenced to eight years at hard labor. A timely motion for appeal was granted. This appeal relates to the conviction and sentence only as it applies to Allen Jones a/k/a Larry Cheatteam.[2]
The only issue presented for our review is whether the evidence used against the defendant was illegally seized, resulting in a trial court error in the denial of a defense motion to suppress the evidence.
FACTS
On the morning of September 3, 2005, Deputy Ryan Singleton of the Jefferson Parish Sheriff's Office was patrolling the Jefferson Parish West Bank area in an attempt to deter looting and restore order to the community after Hurricane Katrina hit the area on August 29th. Deputy Singleton was assisted in this endeavor by two volunteer officers from the Douglas County Georgia Sheriff's Office. Deputy Singleton was in his vehicle alone, while the two Georgia officers, accompanied by a canine, were in a separate vehicle. Because the radio towers were down and the Georgia frequencies did not match that in Deputy Singleton's unit, the officers in the two separate vehicles were unable to converse. Consequently, the Georgia officers followed Deputy Singleton on his patrol, stopped and got out when he did.
*1146 Deputy Singleton explained that he had been in charge of the detail of officers at the Burlington Coat Factory (Burlington) on Manhattan Boulevard prior to the hurricane and was familiar with the store and its merchandise. The store had been closed since Hurricane Katrina, and the deputy was asked by the manager to check on the store whenever possible. Deputy Singleton had discovered the previous day that the store had been broken into and was looted, although many items still remained in the store. Consequently, he returned the following day in an attempt to deter any further losses. He was in the parking lot of the store when he saw three men come out, each carrying a backpack. The deputy described the three as African-Americans, two wearing shorts and one wearing jeans. One of the men had dreadlocks covered partially by a hat. One of the other men had a "low" haircut.
When the three men saw Deputy Singleton's unit, they ran up the sidewalk area towards Manhattan. Because the parking lot was strewn with debris including a downed pole, Deputy Singleton had to proceed slowly. By the time he got to the corner of the building, the three suspects had disappeared. The officer theorized that the men went into the convalescent home behind Burlington. He explained that there is an alleyway and a small fence, which was blown down by the storm, between the back of Burlington and the convalescent home. Deputy Singleton drove onto Manhattan and around the area, but was unable to find the suspects.
The officers resumed their normal patrols. About thirty minutes to one hour later while driving on Pailet Street, a residential area off Manhattan, Deputy Singleton spotted the three men. Deputy Singleton testified that he recognized the three as the same three individuals who came out of Burlington earlier with the backpacks. Deputy Singleton was certain they were the same individuals, and further testified they were still carrying the backpacks.
At this point, Deputy Singleton got out of his car with his weapon drawn, and ordered the men to drop the backpacks. The Georgia officers, traveling close behind did the same. The three suspects complied with the deputy's orders. Deputy Singleton conducted a pat down search, which produced no weapons. Deputy Singleton then retrieved the backpacks. The officer knew that the backpacks were from Burlington because he often worked a detail in the store to prevent shoplifting. Deputy Singleton testified that he recalled that there was a "school wall" near the front door of the store and these backpacks were part of the display. The backpacks each sported a Burlington sales tag attached on the outside of the bag.
The deputy opened the backpacks then to be sure there were no weapons and found clothing items taken from Burlington inside all three. Deputy Singleton testified that he was familiar with, and could identify, the tags on all of the items inside the backpacks as those used by Burlington. The officer took an inventory of the items in the three backpacks. The items included tee shirts, shirts, and a pair of Nike shoes. There were a total of twenty-six items in the three backpacks for a total amount of $368.00.
While Deputy Singleton was involved with the three suspects, the two Georgia officers were providing protection. Deputy Singleton explained that was necessary because there were about fifteen to twenty individuals shouting obscenities and cursing at the officers from a two-story apartment building behind them. The three subjects were arrested and taken to police headquarters. Because of Hurricane Katrina there were no means to photograph *1147 the items, so they were inventoried and then returned to the store.
ASSIGNMENT OF ERROR
In brief to this court, the defendant argues the trial court erred in denying his motion to suppress the evidence. The defendant asserts that the officers had neither reasonable suspicion of criminal activity for an investigatory stop, nor probable cause to arrest the defendant under the facts of this case. Therefore, any evidence taken from the defendant was illegally seized and should have been suppressed. The defendant asserts that the merchandise was found only after the officer looked into the backpacks. The defendant reasons that, even assuming there was some basis for a stop, the seizure of evidence was illegal because he complied with the officer's request to drop the backpack and put his hands on the police car. The defendant further argues that even if the backpacks contained weapons, the threat to the officer was removed when the defendant dropped the backpack. The defendant reasons that, since no weapon or contraband was found on him, there was no justification for the arrest and no reason or justification to search the backpack.
The State responds that Deputy Singleton had probable cause to arrest the defendant because the officer saw the defendant and his two co-defendants leave Burlington with backpacks during a time of extensive looting in the aftermath of Hurricane Katrina. The officer testified both at the motion to suppress hearing and at trial that he was certain as soon as he saw the three men that they were the same three who exited the store with the backpacks.
The State further argues that the backpack was searched pursuant to a valid arrest and the evidence seized should not be suppressed. The State argues that an analysis of whether there was reasonable suspicion for an investigatory stop is inappropriate since Deputy Singleton had probable cause for arrest. We find the State's argument persuasive.
LAW AND ANALYSIS
The Fourth Amendment to the United States Constitution and Louisiana Constitution Article I, § 5 protect individuals from unreasonable searches and seizures. State v. Massey, 03-1166 (La.App. 5 Cir. 1/27/04), 866 So.2d 965, 968. It is axiomatic that a valid arrest for criminal activity is not a constitutionally unreasonable seizure.
An officer may make a warrantless arrest when the officer has probable cause to believe that the person to be arrested has committed an offense. State v. Davis, 00-278 (La.App. 5 Cir. 8/29/00), 768 So.2d 201, 212 (citing La.C.Cr.P. art. 213), writ denied, 00-2730 (La.8/31/01), 795 So.2d 1205. Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable, trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Austin, 04-993 (La.App. 5 Cir. 3/1/05), 900 So.2d 867, writ denied, XXXX-XXXX (La.11/28/05), 916 So.2d 143.
In the determination of whether probable cause exists for the arrest, all of the information in the possession of the police, at the time of the arrest, should be considered. State v. Buckley, 426 So.2d 103, 109 (La.1983). A determination of probable cause, unlike the determination of guilt at trial, does not require the resolution of conflicting evidence under a reasonable doubt or even a preponderance standard sufficient to support a conviction, since it deals with probabilities. However, it does require something more than bare suspicion. Gibson v. State, 99-1730 (La.4/11/00), 758 So.2d 782, 788-89, cert. *1148 denied, 531 U.S. 1052, 121 S.Ct. 656, 148 L.Ed.2d 559 (2000).
Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 72, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118. The facts need not eliminate all possible innocent explanations in order to support a finding of probable cause. Gibson v. State, 758 So.2d at 789. The determination of reasonable grounds for probable cause for an arrest does not rest on the officer's subjective beliefs or attitudes, but rather turns on a completely objective evaluation of all the circumstances known to the officer at the time of the arrest. State v. Hill, 821 So.2d at 83.
One of the most important factors in determining if probable cause exists is satisfied when police officers know that a crime has actually been committed. In such a case, the police officers need only demonstrate probable cause to identify the person who committed the crime. State v. Sterling, 444 So.2d 273, 278 (La.App. 1 Cir.1983).
In the matter before us, Deputy Singleton witnessed the defendant and two others come out of an already looted Burlington Coat Factory. The three men were carrying backpacks and ran when they saw Deputy Singleton's police unit. The deputy saw the same individuals within an hour later in the same general area and positively identified them as the men he had seen earlier at Burlington. Deputy Singleton also testified that the defendant and his companions were still carrying the backpacks. Further, Deputy Singleton testified that he recognized the backpacks as Burlington's merchandise because he worked details at the store and was familiar with the backpacks and the tags used on Burlington merchandise.
The State has the burden of establishing the admissibility of evidence seized without a warrant in a hearing on a defense motion to suppress the evidence. La.C.Cr.P. art. 703(D), State v. Manson, 01-159 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 755. A trial court's denial of a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Payne, 04-1084 (La. App. 5 Cir. 1/25/05), 894 So.2d 528, 530. The appellate court must consider the totality of the circumstances, while giving deference to the inferences and deductions of trained police officers that might elude an untrained person. State v. Gagnon, 817 So.2d at 170. The evidence adduced at the hearing on the motion to suppress, as well as all pertinent evidence given at the trial of the case, may be considered in determining whether a motion to suppress ruling was correct. State v. Roche, 05-237 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 765, writ denied, 06-1566 (La.1/8/07), 948 So.2d 120.
The defendant's main support for his argument that the evidence was unconstitutionally seized is faulty as it misstates Deputy Singleton's trial testimony. The defendant argues that Deputy Singleton did not recognize the three men when he stopped them, and only realized they had looted when he opened the backpack after the arrest. That argument is not supported by the deputy's testimony. Deputy Singleton's testimony in both the motion to suppress hearing and at trial was consistent. The deputy testified that he clearly saw the three men when they came out of Burlington with the backpacks, and later recognized them immediately as the same three men he saw earlier. *1149 We find that to be sufficient probable cause for the arrest.
Our next inquiry is whether the search of the backpacks was justified. The right to seize items after lawful arrest and during booking is not completely unfettered, as the item seized must be contraband, an instrumentality of the crime, a fruit of the crime, or evidence of a crime. State v. Wilson, 467 So.2d 503, 517 (La. 1985), cert. denied, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985).
Here, the backpacks were searched after the suspects were arrested and handcuffed. We are aware that searches incident to a lawful arrest are not without limitations and there has been much discussion on the extent of the intrusion allowed by such searches. See: State v. Warren, 05-2248 (La.2/22/07), 949 So.2d 1215. However, we find that analysis is unnecessary in the matter before us.
In the instant case, Deputy Singleton affected a valid arrest of the defendant for looting the Burlington Coat Factory. It is clear from the testimony that this officer had special knowledge of the merchandise of Burlington because of his job as the head of a police detail at the store before the hurricane. Further, he testified that he recognized the backpacks the defendant and his two co-defendants were carrying as items sold by Burlington in a display area near the door. Finally, he testified that the backpacks themselves still had sales tags which were visible on the exterior of the bags. Therefore, the individual backpacks were evidence of the crime in plain view at the time of the arrest.
In order for the plain view exception to the warrant requirement to apply, there must be prior justification for police intrusion into a protected area and it must be immediately apparent, without close inspection, that the item is contraband. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); State v. Gray, 06-298 (La.App. 5 Cir. 10/31/06), 945 So.2d 798; writ denied, 2006-2958 (La.9/14/07), 963 So.2d 993.
We find that to be the case here. Deputy Singleton had probable cause to arrest and justification to search the backpacks since the backpacks themselves were contraband. Consequently, we find no error in the decision of the trial court to deny the defendant's motion to suppress the evidence presented against him.
The defendant also requests a review of the record for errors patent. We have conducted such a review and find three such errors. Initially, we note that the defendant was not arraigned on the amended bill of information which added his alias. However, the defendant did not object to this failure prior to trial. Accordingly, this error is waived. La.C.Cr.P. art. 555; State v. Wilson, 00-1378 (La.App. 5 Cir. 6/27/01), 789 So.2d 766.
The record reveals that the trial judge did not observe the mandatory twenty-four hour delay between the denial of a motion for new trial and sentencing required by La.C.Cr.P. art. 873. As a rule, when a defendant challenges a non-mandatory sentence and the delay is not waived, his sentence must be vacated and the case remanded for resentencing. State v. Sims, 02-1244 (La.App. 5 Cir. 4/29/03), 845 So.2d 1116, 1122, writ denied, 03-2189 (La.8/20/04), 882 So.2d 570. However, in State v. White, 404 So.2d 1202 (La.1981), the Louisiana Supreme Court has found:
Although C.Cr.P. Art. 873 unequivocally requires the trial court to delay imposition of sentence for a period of at least 24 hours after denial of post-trial motions, there has been no objection raised regarding the sentence imposed *1150 in this case and no showing or suggestion that defendant was prejudiced by the failure to observe the delay. Judicial efficiency therefore dictates that this court need not follow the useless formality of remanding for reimposition of a sentence which has not been challenged.

State v. White, 404 So.2d at 1204 (Citation omitted).
Citing State v. White, supra, this court has found that when a defendant does not waive the twenty-four hour delay afforded by La.C.Cr.P. art. 873, and does not challenge the penalty imposed, the error may be harmless. State v. Alexander, 98-993 (La.App. 5 Cir. 3/10/99), 734 So.2d 43, 48 writ denied, 99-2138 (La.12/10/99), 751 So.2d 250.
Although the defendant herein did not waive the delay for sentencing, he did not object to the sentence in the trial court, or raise any issue regarding his sentence on appeal. Accordingly, we find no corrective action is necessary.
The final error patent on the record is admitted in the State's brief. The trial court failed to advise the defendant of the prescriptive period for filing for post-conviction relief as required by La.C.Cr.P. art. 930.8.[3] Therefore, we remand this matter to the trial court with an order to inform the defendant of the appropriate prescriptive period for filing post-conviction relief by sending appropriate written notice to the defendant within ten days of the rendition of this opinion, and to file written proof that the defendant received the notice in the record.
The conviction and sentence is affirmed and the matter is remanded to the trial court with an order.
AFFIRMED AND REMANDED WITH ORDER.
NOTES
[1] R.S. 14:62.5(A) provides: Looting is the intentional entry by a person without authorization into any dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person, or any structure belonging to another and used in whole or in part as a place of business, or any vehicle, watercraft, building, plant, establishment, or other structure, movable or immovable, in which normal security of property is not present by virtue of a hurricane, flood, fire, act of God, or force majeure of any kind, or by virtue of a riot, mob, or other human agency, and the obtaining or exerting control over or damaging or removing property of the owner.
[2] The other two defendants have filed separate appeals with this court.
[3] There is a discrepancy between the minute entry and the transcript on this issue. Accordingly, the transcript prevails.