MARC E. JOHNSON, Judge.
12Pefendant, Luhron Gorman, appeals his convictions and sentences for armed robbery and felon in possession of a firearm on the basis he was denied his right to confrontation through limited cross-examination of a State witness and denied his right to conflict-free counsel. For the reasons that follow, we affirm.
On March 25, 2010, the Jefferson Parish District Attorney filed a bill of information charging defendant with armed robbery with a gun in violation of La. R.S. 14:64 and 14:64.3 (Count 1), and possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1 (Count 2).[1] He pled not guilty and filed several pre-trial motions, including a motion to suppress identification and statement which was denied after hearing. The State subsequently amended the bill of information to remove the charge relative to La. R.S. 14:64.3, armed robbery while armed with a gun. Defendant proceeded to trial on October 7, 2010, and a 12-person jury found him guilty as charged on both counts. On October 25, 2010, the trial court sentenced defendant to 75 years at hard labor on Count 1 and 15 years at Chard labor on Count 2 without benefit of parole or probation, with the sentences to run consecutively.
The State subsequently filed a multiple bill alleging defendant to be a third felony offender. On January 12, 2011, defendant stipulated to the multiple bill. The trial court vacated defendant’s original sentence on Count 1 and resentenced him under the multiple offender statute to 75 years at hard labor to run consecutively to the original sentence on Count 2.[2]

FACTS

On February 20, 2010, Althea Ovella, age 76, left church and drove to her mother’s house in the 300 block of Sena Drive in Metairie. When she arrived at approximately 5:15 p.m., she observed two young men walking across the street. Ms. Ovella opened the garage door with a remote control and went inside of the garage. As she opened her car door, one of the men she had seen across the street pointed a black handgun at her and demanded her purse. Ms. Ovella asked the gunman not to take her purse because it contained her babies’ pictures. The gunman asked if she *594 had any money, and Ms. Ovella responded by giving him $60.00. He allowed her to keep her purse. The other man, who was standing by the garage door, told her to be quiet and that they were not going to hurt her.
After taking her money, the gunman said, “Let’s go inside.” Ms. Ovella begged him not to go inside, explaining that her 97-year-old mother would die if she saw him come inside with a gun. The gunman asked if she had a gun or if her mother had any money, and Ms. Ovella responded negatively. The man standing by the garage door said, “Let’s go,” and he and the gunman left.
John Carroll, a former detective sergeant with the Jefferson Parish Sheriffs Office (JPSO), investigated the armed robbery and developed two suspects. He | ¿prepared two photographic lineups and showed them to Ms. Ovella, who positively identified defendant as being the man who stood back during the robbery. A few days later, Ms. Ovella positively identified the gunman in another photographic lineup. Thereafter, defendant was arrested and brought in for questioning. After being advised of and waiving his rights, defendant admitted committing the armed robbery of Ms. Ovella.
During his investigation, Detective Carroll learned that defendant and his girlfriend were staying at the Travelodge located at 2200 Westbank Expressway in Room 308. The police obtained the girlfriend’s consent to search the room and recovered a fully loaded silver Taurus revolver hidden behind an air conditioning unit. It was determined that this gun was not the gun used in the robbery of Ms. Ovella.
During defendant’s statement, which occurred after the search of the motel room, he admitted that he had placed a gun inside the air conditioning unit. He also identified Michael Collier as the gunman in the robbery.
At trial, defendant testified that on the day in question, he and Collier tried to commit a burglary in New Orleans, but decided not to do so when they saw children in the house. They drove away from the scene and eventually made their way to Metairie Road. They thought the police were pursuing them, so they parked the car near a service road and began walking. When they saw a garage door open, they ran inside of the garage. Inside the garage, defendant saw Ms. Ovella, who started to scream. He told her to be quiet and that they were not going to hurt her.
According to defendant, Collier then pulled out a gun. Defendant told Collier to put the gun away because the woman was about to have a heart attack. Defendant claimed he did not leave at that point because he was afraid Collier was Ingoing to hurt the woman. He recalled the woman asking them not to go inside of the house because of her 97-year-old mother. Afterwards, Collier took money from the woman, and he and defendant left.
Defendant subsequently saw himself on the news, at which time he fled to Monroe. He was eventually apprehended by U.S. Marshals and brought back to Jefferson Parish. Defendant claimed his initial intent was not to rob Ms. Ovella, and that he only ran inside the garage to avoid the police. Defendant admitted that he had a gun on him during the incident, but stated he did not pull it out.
On rebuttal, Ms. Ovella testified that defendant’s testimony was wrong, in that defendant and Collier were not running prior to the incident, there were no police cars around, and the gunman did not pull the gun out after he came into the garage as he already had it out. Ms. Ovella also stated that the only words defendant said *595 were, “Let’s go,” and that he did not tell Collier anything else.
Defendant and the State stipulated that defendant had previous convictions for possession of cocaine and possession of cocaine with intent to distribute and that his convictions occurred within the ten-year period required by La. R.S. 14:95.1.

DISCUSSION

Defendant asserts two assignments of error on appeal. First, through counsel, he claims the trial court impermissibly limited his right to cross-examine Detective John Carroll by denying defendant’s request to question Detective Carroll on his then-pending criminal charges. Defendant contends the trial judge’s ruling deprived him of his constitutional right to confront a critical witness against him. Second, in a pro se supplemental brief, defendant argues the trial court violated his Sixth Amendment right to conflict-free counsel when it denied his motion to appoint new counsel. Defendant maintains a conflict arose when he had ha verbal outburst in court, attempted to address the trial court, and advised the trial court that his counsel never discussed his defense with him.

Right to Cross-Examination

Prior to testimony being taken, the prosecutor advised the trial judge that it was his intent to call former Detective Carroll as a witness. He argued that the defense should not be allowed to cross-examine Carroll as to why he was no longer with the JPSO because the reasons for Carroll’s departure were irrelevant. He noted that Carroll had not been convicted of any crimes and, therefore, any evidence that Carroll had been arrested or terminated was inadmissible. The prosecutor added that there were no allegations relating to Carroll’s trustworthiness. Defense counsel responded that any such limitation violated defendant’s right to confront Carroll.
The trial judge ascertained that Carroll had been accused of distribution of cocaine, which had no relationship to the instant case. The prosecutor said that he had made a written disclosure in the record that Carroll was arrested for possession of steroids and conspiracy to distribute cocaine, which had nothing to do with his truthfulness. The prosecutor explained that Carroll’s case was presently being screened, that Carroll had not been indicted, and that the District Attorney’s Office had recused itself in Carroll’s case. He remarked that the State had no ability to affect the outcome of Carroll’s case because the Attorney General’s Office was handling the screening and prosecution of it. Defense counsel nonetheless argued that Carroll’s arrest and dismissal from the police department were directly relevant to his ability to tell the truth.
After hearing arguments of counsel, the trial judge stated he was inclined to maintain the State’s objection, but he had to hear what the questions were. [^Defense counsel said she would object should the trial judge prevent her from eliciting certain testimony from Carroll.
At trial, defense counsel asked Carroll on cross-examination why he was no longer employed by the JPSO. The prosecutor objected as to relevance, and the trial judge sustained the objection. When defense counsel later asked Carroll why he was no longer a policeman, the prosecutor objected again as to relevance, and the trial judge again sustained the objection.
The Sixth Amendment of the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to be confronted with the witnesses against him. State v. Carter, 96-358 (La.App. 5 Cir. 11/26/96), 685 So.2d 346, 351. The primary purpose of confron *596 tation is to secure for the defendant the opportunity for cross-examination. Id. However, the extent of cross-examination is not without limitation. In order for evidence to be admissible at trial, it must be relevant. The determination regarding the relevancy of tendered evidence, and therefore the scope and extent of cross-examination, is within the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion. Id.
The credibility of a witness may be attacked by any party, including the party calling him. La. C.E. art. 607(A). The right to impeach a witness for bias or interest is encompassed in the right of confrontation, and is specifically dictated by La. C.E. art. 607(D). State v. Hollins, 97-627 (La.App. 5 Cir. 11/25/97), 704 So.2d 307, 309, writ denied, 99-507 (La.8/25/99), 747 So.2d 50. However, “[particular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of a crime as provided in Articles 609 and 609.1 or as constitutionally required.” La. C.E. art. 608(B).
|sLa. C.E. art. 609.1(B) provides that “[gjenerally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.”
Despite the general rule, the possibility that the prosecution may have leverage over a witness due to that witness’s pending criminal charges is recognized as a valid area of cross-examination. State v. Wiley, 10-811 (La.App. 5 Cir. 4/26/11), 68 So.3d 583, 592. It is well-settled that a witness’s “hope or knowledge that he will receive leniency from the State is highly relevant to establish bias or interest.” Id. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.
In State v. Wiley, supra, defendant argued the trial court erred in refusing to allow him to question a former JPSO deputy at hearings on a motion to suppress regarding the deputy’s felony drug arrests and filing of false police reports. This Court found the trial court did not abuse its discretion in ruling that the former deputy could testify at trial and that no mention of his arrests could be presented to the jury at trial. This Court noted that the record indicated the witness was not promised anything by the State in return for his testimony, there was no evidence that the former deputy acted inappropriately in the case at bar, and his arrest was remote from the arrest of the defendant. This Court further noted there was little probative evidentiary value to disclosing the nature of the former deputy’s arrest. Id. at 592.
Also, in State v. Wright, 10-577 (La.App. 5 Cir. 2/15/11), 61 So.3d 88, writ denied, 11-560 (La.9/30/11), 71 So.3d 283, the defendant argued he was denied |9his right to present a defense when the trial judge prevented him from asking a State witness why he was no longer employed by the JPSO. This Court found that the defendant had not shown he was prejudiced by the limitation of cross-examination of the witness. This Court noted that the former detective’s testimony had not been proffered, he did not testify at trial, and defense counsel elicited uncontrovert-ed testimony that the detective obtained the defendant’s statement by beating him. Id. at 100-03.
*597 In the instant case, although the prosecutor said that he had made written disclosure in the record that Carroll was arrested for possession of steroids and conspiracy to distribute cocaine, the record does not reflect such a disclosure. Additionally, Carroll was not questioned outside the presence of the jury regarding his arrests and, therefore, that testimony was not proffered for this Court’s review. Nevertheless, even assuming Carroll was arrested for the stated charges, we find the trial judge did not err by refusing to allow the defense to cross-examine Carroll regarding his arrests.
First, the prosecutor represented that the District Attorney’s Office had re-cused itself in Carroll’s case and that the Attorney General’s Office was handling the screening and prosecution of it. Therefore, the District Attorney’s Office had no ability to affect the outcome of Carroll’s case. Second, the record does not indicate and defendant does not allege that Carroll was promised anything by the District Attorney’s Office or the Attorney General’s Office in return for his testimony. Third, the allegations against Carroll regarding possession of steroids and conspiracy to distribute cocaine were irrelevant to the instant case and, therefore, there was little probative evidentiary value to disclosing the nature of Carroll’s arrest.
| mLastly, there was no evidence that Carroll acted inappropriately in the instant case. Although Carroll took defendant’s statement, other detectives were present, and the record does not reveal and defendant does not allege any irregularities in defendant’s statement. In fact, defendant decided to confess to the instant offense when he was being questioned by Orleans Parish detectives, and he specifically asked for Carroll to be brought back into the room so Carroll could hear his confession. Also, even though Carroll was the one who found the gun in defendant’s motel room, defendant admitted in his statement that he hid the gun inside the air conditioning unit in that room. Defendant also admitted at trial that he possessed a gun during the incident, but did not pull it out.
In light of the foregoing, we find that the trial judge did not err by disallowing cross-examination of Carroll regarding his then-pending criminal charges.

Right to Conflict-Free Counsel

The record reflects defendant filed a pre-trial pro se “Motion for Appointment of New Counsel,” on what appears to be October 6, 2010, requesting appointment of new counsel based on an attorney-client conflict. On October 7, 2010, the day of trial, the trial judge noted that defendant had filed a pro se motion for appointment of new counsel and denied the motion. The trial judge first noted the age of the case and stated he was not going to grant the motion less than an hour before trial was set to start. He further commented that defense counsel had been competent and zealous in her representation of defendant and that he did not believe counsel could do more for defendant than she had already done. Defendant’s subsequent request to personally address the court was denied.
The proceedings continued. The parties conducted jury voir dire and entered into trial stipulations. At some point, the trial judge inquired into defendant’s pearlier outburst, which is not transcribed in the record. According to defendant’s motion for new trial, his outbursts included verbal accusations that his defense counsel was sleeping with the prosecutor, was accepting cash payments “under the table,” and failed to get him a good plea deal. Defendant further “yelled” to the jurors that he tried to fire his counsel before trial and obtain new counsel, but was being forced *598 to retain his old counsel. The trial judge asked both defense counsel and the prosecutor if anything defendant said during his outburst was true, to which both responded negatively.
The prosecutor then advised the trial judge that a deputy had told him that defendant said he intended to disrupt the proceedings again in order to cause a mistrial. The trial judge warned defendant that if he disrupted court again he would be removed. Defendant responded by telling the trial judge that he and his attorney never discussed a defense, and that all they had discussed were plea bargains.
A little while later, after discussion regarding Carroll’s testimony, defense counsel told the trial judge that defendant felt another outburst coming on and would like to be removed from the courtroom. The trial judge directly addressed defendant who told the judge that he did not want to be in there, that they could have the trial without him, and that he had no lawyer. After additional discussion, the trial judge said, “Take him downstairs.”
The Sixth Amendment to the United States Constitution and Louisiana Constitution Article 1, § 13 guarantee that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense. If a defendant is indigent, he has the right to court-appointed counsel. State v. Reeves, 06-2419 (La.5/5/09), 11 So.3d 1031, 1057, cert. denied, — U.S. —, 130 S.Ct. 637, 175 L.Ed.2d 490 (2009). The right of a defendant to counsel of his choice has l^been implemented by La.C.Cr.P. art. 515, which provides in pertinent part that, “Assignment of counsel shall not deprive the defendant of the right to engage other counsel at any stage of the proceedings in substitution of counsel assigned by the court.” However, an indigent defendant does not have the right to have a particular attorney appointed to represent him. An indigent’s right to choose his counsel only extends to allowing the accused to retain the attorney of his choice if he can manage to do so, but that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. Reeves, 11 So.3d at 1057.
The question of withdrawal or substitution of counsel largely rests within the discretion of the trial judge, and his ruling will not be disturbed in the absence of a clear showing of an abuse of discretion. See State v. Leger, 05-0011 (La.7/10/06), 936 So.2d 108, 142, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).
Additionally, a criminal defendant is entitled not only to counsel but also to conflict-free counsel. U.S. Const. Amend. 6 and 14; La. Const. Art. I., § 13; State v. Franklin, 400 So.2d 616, 620 (La.1981). After the trial court has been alerted that a conflict of interest exists, the judge must take the proper steps to assure that the defendant’s Sixth Amendment right to effective assistance of counsel is not violated. State v. Cisco, 01-2732 (La.12/3/03), 861 So.2d 118, 132, cert. denied, 541 U.S. 1005, 124 S.Ct. 2023, 158 L.Ed.2d 522 (2004).
The mere possibility of a conflict is insufficient to impugn a criminal conviction. Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). It is only when an actual conflict exists that the reversal of a conviction may be required. See Mickens v. Taylor, 535 U.S. 162, 168, 122 S.Ct. 1237, 1242, 152 L.Ed.2d 291 (2002), citing Holloway v. Arkansas, 435 U.S. 475, 13481, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978). An actual conflict is defined as follows:
*599 If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interest of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.
State v. Kahey, 486 So.2d 475, 484 (La.1983), citing Zuck v. Alabama, 588 F.2d 436 (5th Cir.1979), cert. denied, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979). “An actual conflict of interest is established when the defendant proves that his attorney was placed in a situation inherently conducive to divided loyalties.” Kahey, 436 So.2d at 484. A conflict can also arise when a defense attorney is required to cross-examine a current or former client on behalf of a current defendant. Cisco, 861 So.2d at 130.
We find no merit to defendant’s argument that he was entitled to new counsel because of a conflict of interest. Defendant contends a conflict arose when he filed a motion to appoint new counsel. Defendant’s mere dissatisfaction with his appointed counsel does not create an actual conflict of interest that requires appointment of other counsel. Furthermore, there is no evidence defense counsel had an actual conflict of interest. The record does not show defense counsel was simultaneously representing defendant and a State witness, nor does the record show that defense counsel was required to cross-examine a witness who was testifying against defendant and who was a client of the attorney.
Insofar as defendant contends he was improperly denied new counsel, we find no abuse of the trial court’s discretion. Defendant filed his motion for appointment of new counsel the day before trial asserting he was dissatisfied with his current counsel. However, defendant did not state the basis for his dissatisfaction other to broadly suggest counsel was not adequately defending him.
114The record shows defense counsel filed pretrial motions, including a motion to suppress statement and identification. At the suppression hearing, defense counsel actively cross-examined the victim and Detective Guesnon, who was involved in the investigation. Additionally, defense counsel diligently tried to negotiate a deal for defendant in the instant case and four similar charges in New Orleans, where defendant would have received all concurrent sentences, but defendant refused the deal. At trial, defense counsel strenuously objected to the State’s request that the defense be prohibited from questioning former Detective Carroll about his then-pending charges. She also thoroughly cross-examined the State’s witnesses. Defense counsel elected not to have defendant in court for the victim’s testimony, and to have him briefly brought in for identification only, because she was concerned he would have another outburst in front of the jury, which she thought would be detrimental to his case. All these actions indicate defense counsel competently and zealously represented defendant throughout all stages of the proceedings against defendant.
In the absence of an adequate showing that the court appointed attorney is inept or incompetent to represent the accused, the court cannot be called upon to appoint counsel other than the one originally appointed merely to please the desires of the indigent accused. State v. O’Neal, 501 So.2d 920, 928 (La.App. 2nd Cir.1987), writ denied, 505 So.2d 1139 (La.1987). Here, defendant failed to make the requisite showing that appointed counsel was incompetent. Based on the record, we cannot say the trial court abused its dis *600 cretion in refusing to appoint defendant another attorney at the time the request was made.
Defendant further seems to suggest he received ineffective assistance of counsel because defense counsel never discussed his defense with him.
|1BA defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that: (1) his attorney’s performance was deficient; and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or “a trial whose result is reliable.” Id. In order to show prejudice, the defendant must demonstrate that, but for counsel’s unprofessional conduct, the outcome of the trial would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
The Sixth Amendment does not guarantee a defendant errorless counsel or counsel judged ineffective by hindsight. State v. Cambre, 05-888 (La.App. 5 Cir. 7/25/06), 939 So.2d 446, 460, writ denied, 06-2121 (La.4/20/07), 954 So.2d 158, citing State v. LaCaze, 99-584 (La.1/25/02), 824 So.2d 1063, 1078, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). Ineffective assistance claims are assessed on the facts of the particular case as seen from the counsel’s perspective at the time. As such, there is a strong presumption that counsel’s conduct will fall within the wide range of reasonable professional assistance. Id.
An ineffective assistance of counsel claim is most appropriately addi'essed through an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted. State v. Taylor, 04-346 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595. An exception to the rule, however, is when the record fully discloses the evidence necessary to decide the issue and the interest of judicial economy warrants consideration on direct appeal. Id.
We find the issue of ineffective assistance of counsel cannot properly be determined on appeal from this record. The only thing before us is defendant’s |lf)self-serving statements that his counsel failed to discuss his defense with him prior to trial. Defendant’s remedy is through post-conviction relief in the trial court where the quality of the attorney’s assistance can be fully developed and explored.

ERRORS PATENT

Pursuant to La.C.Cr.P. art. 920, the record was reviewed for errors patent. We first note the trial court failed to impose the mandatory fine on Count 2 of not less than $1,000 nor more than $5,000 as required by La. R.S. 14:95.1(B). This Court has authority to correct an illegally lenient sentence under La.C.Cr.P. art. 882. However, this authority is permissive rather than mandatory. We note defendant’s indigent status in this case and, thus, decline to correct his illegally lenient sentence by remanding for imposition of the mandatory fine. See State v. Horton, 09-250 (La.App. 5 Cir. 10/27/09), 28 So.3d 370, 376.
Second, neither the sentencing transcript nor the original commitment reflects the trial judge advised defendant of the two-year prescriptive period for filing an application for post-conviction relief under La.C.Cr.P. art. 930.8. Therefore, by way of this opinion, we advise defendant that no application for post-conviction relief, including applications which seek an out-of- *601 time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. See State v. Neely, 08-707 (La.App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied, 09-248 (La.10/30/09), 21 So.3d 272.
DECREE
For the reasons stated herein, defendant’s convictions and sentences are affirmed.

CONVICTIONS AND SENTENCES AFFIRMED

. The bill of information also charged co-defendant, Michael Collier, with armed robbery with a gun. Defendant filed a motion to sever the parties for trial, which was granted.

. Defendant’s multiple offender proceedings and adjudication are not part of this appeal.