JUDE G. GRAVOIS, Judge.
|2The defendant, Renard Scott, has appealed his conviction of second degree murder. For the reasons that follow, we affirm defendant’s conviction and sentence.

FACTS

On the evening of July 3, 2005, Trellas Porter was shot and killed on the inside of his home in Harvey, Jefferson Parish, Louisiana. Defendant and his co-defendant, Cedric Lewis, were tried together for this murder. This appeal involves only defendant.
At trial, Ms. Alicia Porter, the mother of the victim, testified that on the evening of July 3, 2005, she was in her bedroom watching television when she heard her mother, Ms. Dorothy Eugene, screaming. Ms. Porter came out of her bedroom to see an intruder in her house, whom she described as a black male with [ssh oulder-length dreadlocks, covering his face with a white tee shirt.[1] Ms. Porter explained that she only saw this person for a second, then backed out of the room to call the police. While doing so, she heard two gunshots. After she got off the phone with the police, Ms. Porter entered her son’s bedroom to find him lying on the floor with his eyes covered with blood. Although not mentioned in her statement to the police, at trial Ms. Porter testified that she heard her son say the name “Cedric” before he was killed.
Ms. Dorothy Eugene, the victim’s grandmother, testified that on the day in question, she was watching television in her den when she heard the front door open followed by hollering. Ms. Eugene ran to the living room where she saw two intruders, one with a gun. She could not see the intruders’ faces because they were concealed with some type of cloth; from their hands, however, she could tell that they were black males. The gunman had dreadlocks. The gunman pointed the gun at the victim who was seated on the sofa. Although the intruders and the victim were talking, Ms. Eugene could not understand what they were saying until she heard the victim say, “Cedric, you don’t have to do this.” The victim then stood up from the sofa and proceeded to his bedroom with the gunman and his accomplice. The gunman tripped and fell over a toy *1050 box. She grabbed the gunman by the neck, scratched him, and pulled his hair. The gunman then pointed the gun in her face. Ms. Eugene called her daughter, Ms. Porter, for help, then ran out of the front door yelling for help. While outside, she heard two gunshots.
Christopher Lindsey was questioned by the police in connection with this murder. Mr. Lindsey asserted his Fifth Amendment right to remain silent at the trial. However, his statement to the police was introduced into evidence at the 14trial. In his statement, Mr. Lindsey stated that on the night of the murder, he accompanied Cedric Lewis to the victim’s residence to buy marijuana. He stood near the front door, entering no further than the front room. When he heard gunshots, he ran from the house. He heard the victim say something along the lines of “Cedric, don’t do this to me.”
Based on Ms. Eugene’s statement that she scratched the gunman, fingernail scrapings were taken from her for DNA analysis. DNA analysis of these scrapings revealed a match to defendant. This DNA material did not match Mr. Lindsey, Cedric Lewis, or the victim. Bonnie Du-bourg, an expert in forensic DNA analysis, testified that the amount of DNA obtained from underneath Ms. Eugene’s fingernails would not be expected to occur from casual contact. When she was shown a photograph of defendant, Ms. Eugene stated that she was not familiar with him. After extensive questioning, there was no indication that Ms. Eugene had come into contact with defendant other than on the night of the murder. At the time of the offense, Ms. Eugene was 84 years old. She testified that she left her home only to go to church and the grocery store.
ASSIGNMENT OF ERROR NUMBER TWO[2]

The evidence was insufficient to support the verdict of murder since identity was not proven beyond a reasonable doubt.

[1,2] In this assignment of error, defendant argues that the trial court erred in denying his motion for a new trial on the ground that the evidence was insufficient to support his conviction of second degree murder, specifically arguing that “no rational trier of fact could have found that the state bore its burden of proving | identity [of the perpetrator] beyond a reasonable doubt.” He argues that the testimony reflected that only two men were present at the scene of the crime, namely, Cedric Lewis and Christopher Lindsey. He asserts that the presence of his DNA underneath the fingernails of Ms. Dorothy Eugene is not enough to identify him as a perpetrator. Conversely, the State argues that the evidence was indeed sufficient to convict defendant of second degree murder.
In reviewing sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. State v. Mickel, 09-953, p. 4 (La.App. 5 Cir. 5/11/10), 41 So.3d 582, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885 (citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La.6/29/01), *1051 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1328, 152 L.Ed.2d 231 (2002)). In addition to proving each statutory element of the crime charged, the State must also prove the identity of the perpetrator. State v. Williams, 08-272, p. 4 (La.App. 5 Cir. 12/16/08), 3 So.3d 526, 529, writ denied, 09-0143 (La.10/16/09), 19 So.3d 470 (citation omitted). When the key issue is identification, the State is required to negate any reasonable probability of misidentifieation in order to carry its burden of proof. Id. Further, positive identification by only one witness is sufficient to support a conviction. Id.
A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20, p. 6 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole 1 firecord and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id., 08-20 at 7, 985 So.2d at 240.
In his brief to this Court, defendant only contests sufficiency of the evidence on the issue of identity. Accordingly, we will only address that issue.
In State v. Wiley, 10-811, p. 13 (La.App. 5 Cir. 4/26/11), 68 So.3d 583, 591, this Court found the evidence was sufficient to convict the defendant as a principal to second degree murder when the most important piece of evidence was a piece of chewing gum which contained the defendant’s fingerprints and DNA. The conviction stemmed from a shooting which occurred during a burglary perpetrated by several individuals. Id., 10-811 at 2-3, 68 So.3d at 585-86. This Court found that the State did not prove that the defendant fired the gun that killed the victim, but did find that the State proved beyond a reasonable doubt that the defendant was a principal to second degree murder. Id., 10-811 at 14, 68 So.3d at 591. In reaching this conclusion, this Court relied on the fact that the defendant’s fingerprint and DNA were found at the scene of the crime. Id.[3]
In the instant case, the only physical evidence linking defendant to the crime was his DNA which was found underneath the fingernails of Ms. Dorothy Eugene. Although Ms. Eugene was unable to identify any of the perpetrators, except to say that they were black males, she testified that she grabbed the gunman by the neck, scratched him, and pulled his hair. Ms. Dubourg, an expert in forensic DNA analysis, testified that the DNA material obtained from underneath Ms. Eugene’s fingernails matched that of defendant and did not match that of Christopher Lindsey or Cedric Lewis or the victim. Ms. Dubourg further testified that the amount of DNA obtained from underneath Ms. Eugene’s fingernails would not be ^expected to occur from casual contact. Detective Donald Meunier, the lead investigator on this case, testified that he questioned Ms. Eugene extensively as to how defendant’s DNA could have gotten under her fingernails. He questioned her about social events that she had attended and asked if she had fallen and someone had helped her in getting up. There was no familial connection between defendant and Ms. Eugene. Detective Meunier showed Ms. Eugene a photograph of defendant and Ms. Eugene responded that she did not know defen *1052 dant. Ms. Eugene’s responses led Detective Meunier to conclude that other than on the night of the murder, there was no indication that she had come into casual contact with defendant, let alone a more than casual scenario in which defendant’s DNA was left underneath her fingernails. Detective Meunier explained that he could not determine an alternative explanation for the presence of defendant’s DNA underneath her fingernails, testifying:
I looked at obvious, not so obvious explanations that would establish how this DNA would have gotten under her nails; again, a friend of the family, associate, general normal contact, things like that, I was able to exclude those.
[[Image here]]
I asked her about church, restaurants, family functions, social events, things of that nature, an all encompassing questioning, to see if there was a particular incident, had she fallen recently, I remember asking her that, had any good Samaritan helped her up, things of that nature, anything that could explain the DNA.
Unable to ascertain an alternative explanation, Detective Meunier concluded that defendant was present at the scene of the murder and he was the person Ms. Eugene was referring to when she said she scratched one of the perpetrators.
Defendant further argues that there was testimony that there were at most two perpetrators who participated in this murder. However, it is well settled that the trier of fact can accept or reject, in whole or in part, the testimony of any witness. State v. Caffrey, 08-717, p. 5 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La.2/5/10), 27 So.3d 297. It is not the appellate court’s function to re-evaluate the credibility of witnesses or reweigh the evidence. Id., 08-717 at 4, 15 So.3d at 202. Despite the inconsistencies as to the number of perpetrators, the jury heard testimony from all of the witnesses, reviewed all of the evidence, and concluded that defendant participated in the murder of Trellas Porter.
Based on Detective Meunier’s testimony that defendant’s DNA was present at the scene of the murder, we conclude that every reasonable hypothesis of innocence was excluded pursuant to LSA-R.S. 15:438.[4] Viewing the evidence in the light most favorable to the prosecution, we find that the evidence was sufficient to convince a rational trier of fact that defendant participated in the murder of Trellas Porter. Accordingly, we find that the trial court did not abuse its discretion in denying defendant’s motion for a new trial on the ground that the evidence did not support the conviction.[5]

ASSIGNMENT OF ERROR NUMBER ONE

The trial couH erred in failing to grant a continuance, severance and/or new trial when the defense informed the court they had contrary defenses and just the week before trial the defense learned that the State was not going to call two essential and exculpatory witnesses.

*1053 In this assignment of error, defendant argues that the trial court erred in denying his motion for a new trial. He avers that his motion for a new trial should have been granted on the grounds that his motion for continuance, motion in\9limine, and motion to sever were erroneously denied.[6] However, defendant’s motion for a new trial and his brief to this Court do not contain any reference to a motion in li-mine. Accordingly, any argument relative to the denial of a motion in limine will not be addressed.[7]
Regarding his motion for a continuance, in his motion for a new trial, defendant argued that the continuance should have been granted to give the defense time to locate a witness, Karra Crayton, the victim’s girlfriend.[8] Defendant asserted that attempts to locate Ms. Crayton were made, but the State never supplied the defense with a valid address. In his brief to this Court, defendant alleges that the defense was notified the Friday before trial that the State could not locate Ms. Crayton and did not intend to call her as a witness. The record indicates that the defense subpoenaed Ms. Crayton and attempted to locate her, to no avail. Thus, on August 23, 2011, the first day of trial, the defense made an oral motion for a continuance in order to locate Ms. Crayton, which the trial court denied. Defendant argued in his motion for a new trial and now on appeal that this denial was erroneous. In response, the State argues that the trial court did not abuse its discretion in denying defendant’s motion for a continuance.
According to LSA-C.Cr.P. art. 712, “[a] motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor.” The Louisiana Supreme Court has consistently held that the decision on whether to grant or refuse a motion for a continuance rests within the sound discretion of the trial judge, and a reviewing court will not disturb such a determination absent a clear abuse of discretion. State v. Shannon, 10-580, p. 11 (La.App. 5 Cir. 2/15/11), 61 So.3d 706, 715, writ denied, 11-0559 (La.9/30/11), 71 So.3d 283. In addition, the Louisiana Supreme Court generally declines to reverse convictions even on a showing of an improper denial of a motion for a continuance absent a showing of specific prejudice. Id. This Court has also recognized that the denial of a motion for a continuance is not grounds for reversal absent abuse of discretion and a showing of specific prejudice. Id.
According to LSA-C.Cr.P. art. 709(A), a motion for a continuance based upon the absence of a witness must state all of the following:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial.
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred.
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
*1054 The requirements of LSA-C.Cr.P. art. 709 are strictly enforced by the courts. Shannon, 10-580 at 14, 61 So.3d at 716. For instance, in State v. Meyers, 95-750, 96-35, 96-395, pp. 21-23 (La.App. 5 Cir. 11/26/96), 683 So.2d 1378, 1388-89, writs denied, 97-0015 (La.5/9/97), 693 So.2d 766, 98-2530 (La.2/5/99), 737 So.2d 745, 00-0995 (La.12/8/00), 775 So.2d 1079, this Court found no abuse of the trial court’s discretion in denying the defendant’s motion for a continuance on the basis of an absent witnesses, whose testimony the defense claimed was exculpatory, where the defendant failed to meet the requirements of LSA-C.Cr.P. art. 709(A)(2) and (3). This Court found there was no showing of a probability that the witnesses would be available at the time to which the trial was deferred, nor was there a showing of the exercise of due diligence in efforts to procure the attendance of the witnesses. Id., 95-750, 96-35, 96-395 at 22, 683 So.2d at 1389.
InSimilarly, in State v. Smith, 03-786, p. 6 (La.App. 5 Cir. 12/30/03), 864 So.2d 811, 817, writs denied, 04-0380, 04-0419 (La.6/25/04), 876 So.2d 830, this Court found that the defendant failed to meet the three requirements in LSA-C.Cr.P. art. 709. In determining that the defendant failed to meet LSA-C.Cr.P. art. 709(A)(2), this Court stated, the “defendant had not even located the witness to determine whether he was the correct [person] at the time the continuance was requested.” Id. Further, this Court noted that the defendant failed to show that he was prejudiced by the failure of the witness to testify and that the case was continued numerous times by defense counsel, the State, and the court-most notably, eleven times by the defense. Id., 03-786 at 6-7, 864 So.2d at 817-18.
Likewise, in the instant case, defendant did not satisfy two of the three requirements in LSA-C.Cr.P. art. 709. First, although defense counsel claimed that Ms. Crayton was an “essential” witness, he failed to provide the facts to which she was expected to testify. He merely stated that “several of her statements don’t mention my client.” He subsequently provided the facts as to which she was expected to testify in his motion for a new trial and on appeal, however, at the motion hearing, he failed to do so. Accordingly, defendant did not comply with LSA-C.Cr.P. art. 709(A)(1).
Second, defendant did not include facts and circumstances showing a probability that Ms. Crayton would have been available at the time to which the trial was to be deferred. In fact, defense counsel admitted that Ms. Crayton could not be located at the time of the requested continuance and he did not make any assurances that she could be located in the future. Accordingly, defendant did not comply with LSA-C.Cr.P. art. 709(A)(2). For these reasons, we find no abuse of discretion in the trial court’s denial of defendant’s request for a continuance.
| ^Further, defendant has not shown how the denial of his requested continuance prejudiced him. In order to show he was prejudiced, defendant must demonstrate that Ms. Crayton’s testimony would have been favorable to the defense and that the trial results would possibly have been different if she had testified. Shannon, 10-580 at 14, 61 So.3d at 716. Defendant claims the fact that Ms. Crayton omitted defendant from her first two statements and then included him in her third statement could have been shown to be exculpatory and favorable to the defense on cross-examination. However, Ms. Crayton stated in her third statement that she omitted defendant from her first two statements out of fear of defendant’s threat to kill her. Thus, there was no showing that Ms. Cray- *1055 ton’s testimony would have been favorable to the defense. In fact, given Ms. Cray-ton’s statement that she did not tell police initially of defendant’s involvement in the murder because of his threats to kill her, it is likely that her testimony would have been unfavorable to defendant. Accordingly, defendant has failed to show how the denial of his motion for a continuance, which allegedly precluded him from procuring Ms.' Crayton as a witness, was prejudicial. Lastly, it is noted that of the thirteen continuances in this case, eight were at the request of the defense.
Accordingly, defendant’s argument that the trial court erred in denying his' motion for a new trial based on the trial court’s denial of his motion for a continuance is without merit.
Defendant also argues on appeal that the State’s failure to timely disclose that neither Christopher Lindsey nor Karra Crayton would testify at trial constituted a discovery violation under LSA-C.Cr.P. arts. 717-728 and Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Contrary to defendant’s assertion, LSA-C.Cr.P. arts. 717-728 do not require the State to inform the defense of whether or not a certain witness will testify at trial. In fact, the State | isis not even required to provide the defense with a list of its witnesses. State v. Marks, 337 So.2d 1177, 1183 (La.1976). Additionally, it is noted that defendant was provided with the statements of Mr. Lindsey and Ms. Crayton. Accordingly, defendant has not shown any “discovery violation.”
Turning to defendant’s motion to sever, in his motion for a new trial, defendant argued that the severance should have been granted because defendant and Cedric Lewis had contradictory defenses. He averred that Cedric Lewis claimed that his DNA had been planted on the scene and that it was defendant who committed the murder, while defendant maintained that Cedric Lewis committed the crime. In his brief to this Court, defendant argues that the defendants should have been severed because the cross-examination conducted by Mr. Lewis’s attorney often harmed the points made by defendant’s attorney and because Mr. Lewis’s attorney wanted a statement played at trial, while defendant did not.
It is well established that motions pending at the commencement of trial are waived when the defendant proceeds to trial without raising as an issue the fact that the motions were not ruled upon. State v. Holmes, 06-2988, p. 80 (La.12/2/08), 5 So.3d 42, 94, cert, denied, — U.S. —, 130 S.Ct. 70, 175 L.Ed.2d 233 (2009) (citations omitted).
Our review of the record in this case indicates that no explicit motion to sever was made in the trial court. On the second day of trial, co-defendant’s attorney sought introduction of the statements of Ms. Crayton due to her unavailability, but defendant’s attorney opposed their introduction. Then co-defendant’s attorney stated: “And the only way I could see to resolve that quandary, is to split the cases and allow us to go to trial first, Mr. Lewis, and have us go to trial first.” The court did not rule on this alleged motion to sever, but did rule that Ms. Crayton’s statements were inadmissible hearsay. In addition to the |14lack of a ruling on the alleged motion to sever, there was also no objection to the lack of a ruling. Accordingly, pursuant to Holmes, any alleged error related to the alleged motion to sever was waived.
Moreover, we find that defendant is not entitled to relief even if the motion to sever was not waived.
LSA-C.Cr.P. art. 704 provides:
*1056 Jointly indicted defendants shall be tried jointly unless:
(1) The state elects to try them separately; or
(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.
Whether justice requires a severance must be determined by the facts of each case. State v. Coe, 09-1012, p. 13 (La.App. 5 Cir. 5/11/10), 40 So.3d 293, 301, writ denied, 10-1245 (La.12/17/10), 51 So.3d 17 (citations omitted). A defendant is not entitled to a severance as a matter of right, but the decision is one resting within the sound discretion of the trial court. Id. A denial of a motion to sever will not be overturned absent a clear abuse of discretion. Id.
A severance is necessary if the defenses of the co-defendants are mutually antagonistic to the extent that one co-defendant attempts to blame the other, causing each defendant to defend against both his co-defendant and the State. Coe, 09-1012 at 13, 40 So.3d at 301. The defendant bears the burden of proof in a motion to sever. Id. The mere unsupported allegation that defenses will be antagonistic is not sufficient to require a severance. Id., 09-1012 at 13, 40 So.3d at 301-02. For defendants to be entitled to separate trials, prejudice must be shown. State v. Jackson, 03-883, p. 16 (La.App. 5 Cir. 4/27/04), 880 So.2d 841, 852, writ denied 04-1399 (La.11/8/04), 885 So.2d 1118.
| ,ñThe record indicates that defendant’s claim that he and his co-defendant had antagonistic defenses was unsubstantiated, in both his argument at trial and on appeal. At trial, the only reference to conflicting interests between the two co-defendants was made by the co-defendant’s attorney when he stated that he wanted Ms. Crayton’s statements to come into evidence, while defendant did not. There is no indication that defendant claimed that the two co-defendants blamed each other. In State v. Jackson, supra, this Court found that the two co-defendant’s defenses in a second degree murder trial were not mutually antagonistic because the defendant neither attempted to implicate his co-defendant as the shooter nor deny his own actions. Likewise, in State v. Collins, 10-0757, p. 24 (La.App. 4 Cir. 5/11/11), 65 So.3d 271, 287, writs denied, 11-1185 (La.11/23/11), 76 So.3d 1153 and 11-1719 (La.1/20/12), 78 So.3d 140, the Fourth Circuit found that the defendant was not entitled to a severance from his co-defendant in a second-degree murder prosecution where both defendants denied any involvement in the shooting, but neither blamed the other for the offense.
Similarly, in this case, defendant did not claim in the trial court that he and his co-defendant blamed one another. Thus, defendant and co-defendant’s defenses were not mutually antagonistic. Accordingly, the trial court did not abuse its discretion in denying the alleged motion to sever.
Consequently, the trial court did not abuse its discretion in denying defendant’s motion for a new trial on the grounds that the denials of the two aforementioned motions were erroneous.

1,«ERRORS PATENT REVIEW

Defendant requests an errors patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), regardless of whether defendant makes such a request.
The record reveals that the trial judge did not observe the mandatory 24-hour delay between the denial of defendant’s motion for a new trial and sentencing as *1057 required by LSA-C.Cr.P. art. 873. The trial judge denied defendant’s motion for a new trial on September 16, 2011, and imposed sentence on defendant that same day.
In State v. White, 404 So.2d 1202 (La.1981), the Louisiana Supreme Court stated:
Although LSA-C.Cr.P. art. 873 unequivocally requires the trial court to delay imposition of sentence for a period of at least 24 hours after denial of post-trial motions, there has been no objection raised regarding the sentence imposed in this case and no showing or suggestion that defendant was prejudiced by the failure to observe the delay. Judicial efficiency therefore dictates that this court need not follow the useless formality of remanding for reimposition of a sentence which has not been challenged.
White, 404 So.2d at 1204 (citation omitted).
Citing White, supra, this Court has found that when a defendant does not waive the 24-hour delay afforded by LSA-C.Cr.P. art. 873, and does not challenge the penalty imposed, the error may be harmless. State v. Jones, 07-271, pp. 10-11 (La.App. 5 Cir. 10/30/07), 970 So.2d 1143,1149-50.
Although defendant in this case did not waive the delay for sentencing, he did not object to the sentence in the trial court, nor raise any issue regarding his sentence on appeal. Accordingly, we find that no corrective action is necessary concerning this issue.
| ^CONCLUSION
For the foregoing reasons, defendant’s conviction and sentence are affirmed.

AFFIRMED

. At trial, Ms. Porter first testified that she saw two intruders in her house. However, she later retracted that and testified, in accordance with her police statement, that she saw just one intruder, a black male with dreadlocks. This statement was introduced into evidence at trial.

. When the issues on appeal relate to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id.

. See also, State v. Morgan, 45,110, pp. 1-8 (La.App. 2 Cir. 4/14/10), 34 So.3d 1127, 1130-34, writ denied sub nom., State ex rel. Morgan v. State, 10-1201 (La.5/27/11), 63 So.3d 992, in which the defendant’s three convictions of aggravated rape based solely on DNA evidence were upheld.

. LSA-R.S. 15:438 provides: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.”

. The trial court’s ruling on a motion for a new trial will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Bazley, 09-358, p. 17 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 19, writ denied, 11-0282 (La.6/17/11), 63 So.3d 1039.

.In his motion for a new trial, defendant argued that the trial court erred in denying his motion for continuance and his motion to sever, and that the testimony and evidence were contradictory as to whether defendant was at the scene of the crime.

. Rule 2-12.4 provides in pertinent part: “All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.”

. All three of Ms. Crayton’s statements to the police were proffered by defendant.