# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 13-1323


## STATE OF LOUISIANA

## IN THE INTEREST OF E.T.


**\*\*\*\*\*\*\*\*\*\***


## APPEAL FROM THE
## JEANERETTE CITY COURT
## PARISH OF IBERIA, DOCKET NO. 2874
## HONORABLE CAMERON B. SIMMONS, CITY COURT JUDGE


**\*\*\*\*\*\*\*\*\*\***


## JAMES T. GENOVESE
## JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Elizabeth A. Pickett, James T. Genovese, and Shannon J. Gremillion, Judges.


### ADJUDICATION AND DISPOSITION VACATED.

**Annette Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, Louisiana  70602-1747**
**(337) 436-2900**
**COUNSEL FOR JUVENILE/APPELLANT:**
       **E.T.**

**J. Phil Haney**
**District Attorney − Sixteenth Judicial District**
**Walter J. Senette, Jr.**
**Assistant District Attorney**
**5th Floor, Courthouse Building**
**Franklin, Louisiana  70538**
**(337) 828-4100, ext. 550**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**GENOVESE, Judge.**

This is an appeal of a juvenile delinquency proceeding. E.T.[1] (the juvenile) was adjudicated delinquent on the charge of simple burglary, a violation of La.R.S. 14:62. The disposition ordered the juvenile placed in secure custody for three years and ordered him to pay $500.00 in restitution to the victim.

A motion to modify disposition was granted, wherein the juvenile was placed in a less restrictive environment in order to get medical treatment. Thereafter, the juvenile filed a motion to reconsider his sentence, a motion to vacate the adjudication, and a motion for new trial, all of which were denied.

The juvenile has appealed, alleging insufficiency of the evidence and abuse of discretion in the trial court's disposition. For the following reasons, we vacate the juvenile's adjudication and disposition.

## FACTS

On August 22, 2010, the home of Byron Smith (Byron) was burglarized while he was hospitalized. During the investigation of the burglary, a t-shirt was found inside the residence which contained the juvenile's DNA. After a trial, the juvenile was adjudicated delinquent for the burglary.

## ERRORS PATENT

Although the Louisiana Children's Code is silent as to whether a juvenile criminal proceeding is entitled to an error patent review, this court has found that such a review is mandated by La.Ch.Code art. 104 and La.Code Crim.P. art. 920. *See State in the Interest of J.C.G.*, 97-1044 (La.App. 3 Cir. 2/4/98), 706 So.2d 1081. In our error patent review, we note several errors patent; however, as a

---

[1] The juvenile's initials are being used in accordance with Uniform Rules—Courts of Appeal, Rule 5–2.

result of the adjudication and disposition being set aside, these errors patent have been rendered moot and need not be addressed.

## ASSIGNMENTS OF ERROR

The juvenile presents the following three assignments of error for our review:

### I.

The evidence introduced at the adjudication hearing was insufficient to prove the identity of E.T. as a participant/principal in the simple burglary beyond a reasonable doubt under the standard of review applicable in delinquency proceedings.

### II.

The juvenile judge abused its discretion in imposing a disposition of three years in secure confinement as it is not the least restrictive alternative available, is nothing more than punishment and is, thus, constitutionally excessive.

### III.

The juvenile judge abused its discretion in ordering restitution be paid when E.T.'s disposition is secure confinement and none of his disposition was suspended.

*ASSIGNMENT OF ERROR NO. 1:*

In his first assignment of error, the juvenile contends that the evidence introduced at the adjudication hearing was insufficient to prove beyond a reasonable doubt his identity as a participant/principal in the simple burglary under the standard of review applicable in delinquency proceedings.

> In a juvenile proceeding, the state's burden of proof is the same as in a criminal proceeding against an adult-to prove beyond a reasonable doubt every element of the offense alleged in the petition. La. Ch.Code art. 883; *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). "In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443

U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). . . . [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La.1984).

*State in the [I]nterest of D.P.B.*, 02-1742, pp. 4-5 (La.5/20/03), 846 So.2d 753, 756. "[A]ppellate review in juvenile delinquency proceedings extends to both law and facts." *State in the [I]nterest of L.T.*, 99-487, p. 6 (La.App. 3 Cir. 10/13/99), 747 So.2d 148, 152.

In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and if such a basis does exist, (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *See Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993). If there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* However, where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the appellate court may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Id.*

*State in the [I]nterest of D.H.*, 04-2105, pp. 7-8 (La.App. 1 Cir. 2/11/05), 906 So.2d 554, 560.

[W]hen the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. *State v. Weary*, 03-3067 (La.4/24/06), 931 So.2d 297; *State v. Neal*, 00-0674 (La.6/29/01), 796 So.2d 649. Positive identification by only one witness is sufficient to support a conviction. *Weary*, 03-3067 at p. 18, 931 So.2d at 311; *Neal*, 00-0674 at p. 11, 796 So.2d at 658; *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988).

*State v. Hughes*, 05-992, pp. 5-6 (La.11/29/06), 943 So.2d 1047, 1051.

*State ex rel. T.W.*, 09-532, pp. 2-3 (La.App. 3 Cir. 10/7/09), 21 So.3d 465, 467-68.

In the case at bar, Byron's brother, Warren Smith (Warren), testified that his father went to check on Byron's home because Byron had been hospitalized. Warren's father opened the home to place water that had been left on the porch inside and realized that the house had been vandalized. Warren's father reported the incident to him. Warren then went to Byron's home. Warren testified the back door of the home had been kicked in, and the house had been vandalized. Warren stated that guns and jewelry had been taken from the home.

Byron testified that he was hospitalized on August 22, 2010, and, while he was in the hospital, his home was burglarized. Byron further testified that when he arrived at his residence, the back door had been kicked in, and his belongings were strewn about. He started cleaning up and saw a t-shirt that did not belong to him on the floor of his bedroom. Byron stated he knew the shirt was not his because he wore a medium/large shirt, and the t-shirt found on the floor was an XL or an XXL. Byron further testified that he did not wear that type of shirt.

Byron was last at his home the Friday morning before being hospitalized. The break-in was discovered on Sunday. Byron indicated that he had locked the door to his home and that his father was the only other person who had a key. Byron testified the juvenile was distantly related to him but had never been to his home. Additionally, Byron stated that, to his knowledge, the juvenile's family did not know that he had been hospitalized. Items missing from Byron's home included fishing rods and reels, guns, a surround-sound stereo system, a safe, gaming devices, a laptop, a television, digital cameras, jewelry, a sword, clothes, DVDs, and CDs.

During the investigation, Sergeant Marva Arceneaux was informed by Byron that a t-shirt found inside the home did not belong to him. She put on

disposable gloves, picked up the t-shirt, placed it in a brown paper bag, and put it in her patrol unit. The bag was subsequently logged into evidence. Sergeant Arceneaux placed the bag containing the t-shirt in the vault, where it remained until it was taken to the crime lab. She did not come into contact with the juvenile while wearing the gloves used to retrieve the t-shirt. Sergeant Arceneaux additionally testified that no fingerprints were taken at the home and that there were neither shoe prints nor a trail leading to the home.

Officer Morman Alexander testified that he retrieved the sealed bag from the evidence vault and brought it to the crime lab; however, he never saw the contents of the bag. He then described the process of logging evidence with the crime lab. Officer Alexander knew the juvenile had a brother, but did not know if they were twins. Chief of Police Marvin Grogan took a DNA sample from the juvenile and transported it to the crime lab.

The juvenile testified that he was seventeen years old and denied having ever been to Byron's home or having any knowledge of the burglary. The juvenile testified that he had no idea how the t-shirt got to Byron's home or why it had his DNA on it. He testified that the t-shirt did not belong to him, as he did not "wear shirts like that." He denied knowing Byron had been hospitalized and also denied having a twin. The juvenile acknowledged a prior burglary conviction.

The crime lab report that was admitted into evidence set forth the following:

> A mixed DNA profile consisting of at least two contributors, most likely one major DNA contributor and one minor DNA contributor, was obtained from the swabbing of the [t]-shirt collar. The major and minor contributor DNA profiles were entered into the C[o]mbined DNA Index System (CODIS) database on 11/08/2012.

> On 11/20/2012, a CODIS match was made between the major contributor DNA profile from the swabbing of the [t]-shirt collar and the reference DNA sample from [E.T.]. . . . In the absence of identical

twins, it can be concluded that to a reasonable degree of scientific certainty, [E.T.] is the source of the major contributor DNA profile from the swabbing of the [t]-shirt.

After listening to the testimony of the witnesses, reviewing the evidence submitted, and listening to the arguments of counsel, the trial court stated, in part:

As a result of the DNA sample being taken and the delinquency charge that is brought against E.T., the, uh, E.T. testified to the extent that after examining the t-shirt in court that it was not his t-shirt; which excludes the hypothesis that someone else may have taken some clothing that E.T. had worn and committed the burglary and left it in the home. Leading the court to believe that the only reasonable explanation which occurred is that E.T. directly possessed this t-shirt at the time of the commission of the offense of the burglary of Byron Smith's house and that the DNA evidence that was found on the collar of the shirt doesn't appear to be any type of incidental contact.

As such, the court believes that pursuant to the petition that was filed that E.T. did in fact commit a burglary of Byron Smith's residence at some point in time between the Friday morning when Mr. Smith had left to go to the hospital and the Sunday, when ultimately the burglary was discovered by Mr. Smith's father when he went to take a case of water that had been left by the Kentwood person, inside the home and that the evidence further goes on to show that this is in fact an actual burglary. The testimony leads the court to believe that the entry to the residence was gained by the individuals who committed the burglary; kicking open the back door that was not something that you could observe from the street. For the purposes of entering the residence to commit therein; an essential element of the burglary.

The juvenile alleges that, not withstanding his DNA found on the collar of a shirt located inside the residence, there was no eyewitness to the offense who identified him as the burglar, no one placed him near the scene during the weekend of August 20–22, 2010, he was not found in possession of any items alleged to have been taken during the burglary, and no fingerprint or footprint evidence placed him at the scene. In support of his argument that the evidence was insufficient to support his conviction, the juvenile cites *State v. Oliphant*, 13-473 (La.App. 3 Cir. 11/20/13), 127 So.3d 91. However, *Oliphant* was just reversed by

6

the supreme court in 13-2973 (La. 2/21/14), --- So.3d ---; therefore, we need not address same.

In the present case, the juvenile avers that the trial court concluded that someone took off the t-shirt and put on clothes from the house, as clothing was listed as missing from Byron's home. He suggests this is inconsistent with the testimony that Byron lived alone and that the t-shirt was an XXL, which was much larger than the medium/large worn by Byron. The juvenile argues that, if the burglar wore an XXL, it is unlikely that he would have fit into the clothing Byron kept in his home; thus, the trial court's conclusion was not plausible.

The juvenile argues that, because the DNA of two people was found on the t-shirt, it is just as likely that the t-shirt was taken into the home by the other DNA contributor. He further argues that the trial court's conclusion that, because the DNA was on the collar of the t-shirt, it was left by the person who wore the t-shirt is unreasonable. The juvenile asserts the DNA could have been left by other reasonable means, including his coming into contact with the t-shirt during a sporting event or fight, by handing the shirt to another, or by lifting the shirt at the collar to move it off other clothing. He asserts these reasonable explanations provide sufficient hypotheses of innocence and could explain why his DNA was on the t-shirt.

The juvenile also avers that the trial court's conclusion that the DNA did not appear to be from incidental contact was unsupported by the record. He further asserts that the DNA report did not limit the number of contributors of DNA, but stated that there were "at least" two contributors; hence, it is just as likely that he touched a shirt belonging to someone else, either by wearing it or merely touching the collar, and left his DNA on the t-shirt. He further asserts the lab report did not

7

indicate how long the DNA had been on the t-shirt. The juvenile notes the offense occurred in August 2010, and the petition was not filed until two-and-one-half years later.

The State contends there was more than just DNA evidence that supports the verdict in this case. The State asserts the following evidence supports the verdict:

> (1) the testimony of the victim that the shirt found at his home was not his[;] (2) the finding by the trial judge [] who personally viewed [the body size of] both ET and the victim that the shirt was large enough to fit ET[;] (3) that ET probably had knowledge that the victim was in the hospital so that the Smith residence unoccupied [sic] and could be easily burglarized[;] and[,] (4) that the crime lab report stated that ET "is the source of the major contributor DNA profile from the swabbing of the shirt" clearly indicating that ET's DNA did not come to be on the shirt as a result of accidental contact. Further, ET took the stand and testified in this case. He denied that the shirt belonged to him and denied ever wearing a white t-shirt and could not offer any explanation of how his DNA got on the shirt. As a result, the State argues that this [was] not a case which involves only DNA evidence[,] but a case in which the trial court gave no weight to ET's testimony. Without ET's testimony[,] there is no "reasonable hypothesis of innocence" in the record. This court should give this "credibility call" by the trial court great weight on appeal and find the evidence sufficient to sustain the conviction for simple burglary.

The State asserts the juvenile did not explain or offer a reasonable hypothesis explaining how his DNA got on the t-shirt. The State argues that the juvenile's only explanation was that the t-shirt was not his, but that explanation was not accepted by the trial court. The State avers the trial court rationally concluded that the only reasonable explanation for the DNA was that the juvenile wore the t-shirt when he committed the burglary. The State then avers the trial court made a factual finding that the DNA evidence did not appear to be from any type of incidental contact and that the factual findings of the trial court involve credibility determinations and should not be disturbed on appeal. We note that the State merely admitted the lab report into evidence without calling any witnesses

from the crime lab or an expert in DNA. There was no evidence presented on how the DNA was deposited onto the t-shirt; thus, the trial court's finding that the DNA was not the result of incidental contact was not supported by the record.

The State argues it can be inferred that the fact that Byron was going into the hospital was communicated to the juvenile's family and to the juvenile when Byron's father visited the juvenile's family. However, there was no proof that Byron's father visited with or spoke to the juvenile's family during Byron's hospital stay. Neither Byron's father nor members of the juvenile's family were called to testify regarding this issue, and Byron testified that, to his knowledge, the juvenile's family did not know he had been hospitalized.

The State cites *State v. Scott*, 11-999 (La.App. 5 Cir. 5/31/12), 97 So.3d 1046, in support of its arguments. In *Scott*, the defendant was convicted of second degree murder. The only evidence linking the defendant to the crime was his DNA, which was found under the fingernails of the victim's grandmother, who allegedly scraped the defendant's neck at the scene of the shooting. An expert in forensic DNA testified that the amount of DNA obtained from under the grandmother's fingernails would not be expected to occur from casual contact. The lead detective extensively questioned the grandmother about how the defendant's DNA could have gotten under her fingernails. She was questioned about social events she attended and whether she had fallen and been helped up by someone. There was no familial connection between the defendant and the grandmother, and she did not know the defendant. The detective concluded that the grandmother had not been in contact with the defendant other than the night of the murder. The detective could not determine an alternative explanation for the presence of the defendant's DNA underneath the grandmother's fingernails. The

fifth circuit concluded that every reasonable hypothesis of innocence had been excluded and that the evidence was sufficient to convince a rational trier of fact that the defendant participated in the murder.

We find *Scott* distinguishable from the case at bar, as there was no testimony from a DNA expert in the case at bar, the juvenile was not questioned extensively about the presence of his DNA on the t-shirt by the State at the adjudication hearing, and there was no evidence that the juvenile was questioned about the t-shirt by police during their investigation.

The State also cites *State v. Authorlee*, 12-1179 (La.App. 3 Cir. 4/3/13), 111 So.3d 1170, *writ denied*, 13-1028 (La. 11/15/13), 125 So.3d 1101. Therein, the defendant was convicted of killing a woman by cutting her throat. DNA was found on the handle of a knife in the victim's possession and under the victim's fingernails. The DNA was not a specific match to the defendant's DNA, but the defendant could not be excluded as a source of the DNA.

This court affirmed the defendant's conviction, stating: "Defendant's argument alleges that potential evidentiary discrepancies in isolation rendered the totality of the evidence presented to the jury insufficient. Defendant's argument fails to consider the vast amount of evidence, outside of the alleged discrepancies, that the jury considered to arrive at the verdict of second degree murder." *Id.* at 1177.

We find the case at bar is distinguishable from *Authorlee* in that there was testimony in *Authorlee* regarding DNA evidence, hostility between the victim and the defendant, and the defendant's presence at the home of the victim on the night of the offense. The only evidence in the case at bar was the juvenile's DNA on the t-shirt found in Byron's home—nothing more; nothing else.

10

The State also cites several "fingerprint" cases in support of the trial court's adjudication in this case; however, all of the fingerprint cases cited by the State are distinguishable from the case at bar insofar as fingerprints at the scene of a crime only prove that the person who left the fingerprint was physically present at the crime scene at some point in time. Furthermore, there were no fingerprints taken at Byron's home; therefore, the State's reliance on fingerprint cases is misplaced. DNA on a t-shirt found at a crime scene does not conclusively prove that the person who left the DNA was ever physically present at the crime scene.

In the instant case, the juvenile's DNA, along with DNA from an unidentified person, were found on a t-shirt located inside Byron's home. Contrary to the trial court's finding, there was no evidence presented regarding how the DNA came to be on the t-shirt. Additionally, there was no other direct or circumstantial evidence presented that linked the juvenile to the offense. The DNA evidence, by itself, does not prove beyond a reasonable doubt that the juvenile was the person who burglarized Byron's home. The State failed to meet the requisite burden of proof in this case. For these reasons, we vacate the juvenile's adjudication and disposition.

*ASSIGNMENTS OF ERROR NOS. 2 AND 3:*

Having vacated the juvenile's adjudication and disposition, we need not and do not address these remaining assignments of error.

**DECREE**

The juvenile's adjudication and disposition are vacated.

**ADJUDICATION AND DISPOSITION VACATED.**